UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| CHERYL RENEE DOSSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV419-035 |
| ANDREW SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY¹, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Renee Dossey seeks judicial review of the Social Security Administration's denial of her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).

### I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's

---

¹ Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).  The Clerk of Court is **DIRECTED** to update the caption accordingly.

decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

---

[2]   At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

Dossey, who was 48 years old when her SSI and DIB claims were denied, alleges disability beginning on October 6, 2009. Tr. 100-02. She earned a GED, attended Savannah Technical College and has worked as a cashier and telemarketer. Tr. 45, 47-51. After a hearing, tr. 38-77, the ALJ issued an unfavorable decision. Tr. 17-37. He found that Dossey's diabetes, lumbar spine degenerative disc disease, cervical spine degenerative disc disease, Crohn's disease, left lower extremity fracture status post open reduction internal fixation, right ankle fracture, obesity, major depressive disorder, general anxiety disorder, personality disorder, and attention deficit hyperactivity disorder constituted severe impairments but did not meet or medically equal a Listing. Tr. 22-23. The ALJ thus found that Dossey retained the RFC to

> . . . lift and carry up to ten pounds occasionally, push and pull ten pounds occasionally, stand or walk for up to two hours in an eight hour workday with normal breaks, and sit for up to six hours in an eight hour workday with normal breaks. The claimant can occasionally climb stairs and ramps, but never climb ladders, ropes or scaffolds; she can frequently balance, she can occasionally stoop, kneel and crouch, but never crawl; and she can occasionally perform overhead work and use foot controls. She can never work at

3

unprotected heights or around other hazards. She is further limited to simple, routine work, involving simple, work-related decisions, with few, if any, workplace changes, and only occasionally interaction with co-workers, supervisors, and the public.

Tr. 25-26. Plaintiff, he determined, could not perform any past relevant work, but could perform the job of an addresser, stuffer, or waxer. Tr. 32. Dossey disagrees, arguing that the ALJ erred in finding that there was no medical evidence of neuropathy, failing to address evidence that assistive devices limited claimant to less than substantial gainful activity. Docs. 11 & 13.

An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the entire record, 20 C.F.R. §§ 404.1520a (evaluation of mental impairments), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). The RFC represents the most a claimant can do despite her limitations, SSR[3] 96-8p, and it is the

---

[3] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

4

ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctor's."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's RFC). And the ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

First, plaintiff argues that the ALJ erred in his determination that there was no medical evidence she suffered neuropathy specifically as to step 2. Doc. 11 at 6-7. She argues that Southern Medical Group determined that she suffered from diabetes Mellitus with neuropathy.

*Id.* at 6. Plaintiff argues, further, that failure to give weight to a treating physician's opinion is reversible error. *Id.* She finally argues that her neuropathy would limit her ability to use her wrists and hands and prevent her from doing sedentary work. *Id.* at 7. The Government points out that, while the ALJ did not specifically find that plaintiff suffered a "severe" impairment in the form of neuropathy, he did find plaintiff's diabetes "severe" and that the neuropathy that plaintiff suffered from was "simply an alleged symptom, sign, or manifestation of her diabetes." Doc. 12 at 4. Moreover, the Government argues that even if neuropathy had been identified as a severe impairment, plaintiff has not shown that it restricted her ability to work beyond the circumstances described in the RFC. *Id.* at 5-8.

As an initial matter, there was no error at step two of the sequential evaluation *even if* plaintiff's neuropathy was a severe impairment. "[T]here is no need for an ALJ to identify every severe impairment at step two." *Tuggerson-Brown v. Comm'r of Soc.l Sec.,* 572 F. App'x 949, 951 (11th Cir. 2014). Indeed, the Eleventh Circuit describes "step two as a 'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present." *Id.* at 950

(citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir 1987)). Thus, so long as there is a finding of at least one severe impairment requiring the ALJ to proceed to step three, there is no error even if not all of the potentially severe impairments are listed. Here, the ALJ found multiple severe impairments satisfying his obligation at step two of the sequential process. Thus, there was no error—at least at step two.

This same logic does not apply to step three of the process however. At that phase, plaintiff is correct that the ALJ determined that there was "no evidence that the claimant had . . . neuropathy. . . " when determining that plaintiff's diabetes diagnoses did not qualify as a listed impairment. Tr. 24. The ALJ did this despite acknowledging that, while diabetes is not itself a listed impairment, endocrine disorders like diabetes should be considered under Listing 9.00B(5) and Social Security Ruling 14-2p. *Id.* at 23. *However*, as plaintiff points out, there is indeed evidence of diagnosed neuropathy in the record. *See e.g.,* doc. 11 at 6. Indeed, even the Government acknowledges that at least one of plaintiff's treating physician diagnosed plaintiff with diabetes mellitus with neuropathy. Doc. 12 at 7-8. Plaintiff however, did not brief the issue of whether the ALJ committed error at step three. The Government—for its part—

merely argued that any error regarding plaintiff's neuropathy was moot because any limitations-if they existed-were adequately accounted for by the ALJ's formulated RFC. Doc. 12 at 5-9. While the Court acknowledges that there is some inconsistency in the record, the burden of proof lies with the plaintiff. *Moore*, 405 F.3d at 1211. In the absence of clear argument regarding any inconsistency in the record at step three, the Court will not construe an error.[4]

Plaintiff's second and third arguments address whether the ALJ erred in failing to include limitations relating to plaintiff's need for assistive devices and the extent of her neuropathy in the RFC. Doc. 11 at 6-10. Specifically, plaintiff argues that the ALJ did not include "pain and radiating paresthesia . . . [below] the wrist of both hands." *Id.* at 6. Likewise, plaintiff argues that the ALJ failed to address the use of an assistive device for mobility after plaintiff needed surgery for a fracture of her ankle. *Id.* at 7-8.

A plaintiff needs to establish the need for an assistive device for at least twelve consecutive months before an ALJ may include that need in

---

[4] Plaintiff argued that the ALJ made no finding of neuropathy at step three, doc. 11 at 6, but then argued as to its absence at step two and step four, *id.*

8

the RFC. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 4416.909; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (finding claimant not disabled if "within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful activity.") (citations omitted). Furthermore, an ALJ may discount a treating physician's opinion if he gives good reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(c)(2)-(3); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). While a treating physician's opinion is valuable to the ALJ's RFC assessment, it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Astrue*, 365 F. App'x at 999 ("the task for determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c)(the ALJ has the responsibility for determining a claimant's RFC). Indeed, the ALJ need not adopt every limitation assessed by a credited medical source, nor must his RFC assessment mirror the opinion of every doctor. *Adams v. Comm'r Soc.*

*Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (an ALJ's decision need not address every limitation in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole); 20 C.F.R. §§ 404.1527(b), (c); 416.927(b),(c).

As the Government notes, there is nothing in the record which indicates that plaintiff required the use of an assistive device for the necessary period. Doc. 12 at 10. Indeed, the record as a whole seems to indicate that while plaintiff occasionally used a wheelchair or was non-weightbearing during certain recovery periods, she did not maintain that need despite decreases in her capacity to bear weight or ambulate normally. *See, e.g., id.* at 10-12. Moreover, contrary to the plaintiff's assertions, the ALJ did discuss plaintiff's need for an assistive device (specifically a wheelchair) in creating the RFC and noted the reduced strength in plaintiff's right ankle. Tr. 27. The ALJ discussed the history of plaintiff's ankle injuries including the extensive surgery she had as a result of the initial injury. *Id.* He noted that while plaintiff was using a wheelchair at some point in time—and after had limited range of motion after a second fall—by January of 2017 the ALJ noted

that plaintiff was "ambulating in a normal shoe with minimal pain and the wound was healing well." *Id.* None of the medical records cited by plaintiff in her briefs, docs. 11 & 13, contradict the ALJ's determinations nor do they reflect opinions by treating physicians which were not taken into account by the ALJ. At the most, plaintiff appears to argue that the ALJ failed to properly consider plaintiff's orthopedic surgeon's note indicating that while plaintiff was walking in a normal shoe she was "show[ing] a limitation on ankle strength . . . [and] was unable to maintain muscle contraction normally." Doc. 11 at 8. However, as stated already, the ALJ specifically noted that plaintiff had a limited range of motion. Tr. 27. Accordingly, there was no error in declining to include the need for an assistive device in the RFC.

As to how plaintiff's neuropathy affected the RFC, plaintiff failed to show that she suffered any limitations from her work which were traceable to her neuropathy—even if that neuropathy did indeed exist. *See Moore*, 405 F.3d at 1213 n. 6 (noting that "the mere existence of . . . impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (*citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a

medically ascertained disability must be measured in terms of its effect upon ability to work.")).  Plaintiff neither points to any limitations stemming from neuropathy in her brief, nor does she identify circumstances where plaintiff's physicians attributed functional limitations to her neuropathy.  Rather, she argues that neuropathy was an impairment identified by various physicians and then argues that the ALJ "should have addressed whether there are limitations attributable to neuropathy."[5]  Doc. 11 at 7.  But that is, as noted above, putting the cart before the horse.  It is not the ALJ's role to identify each way in which an impairment could limit an applicant's ability to perform various ranges of work.  Rather it is for the claimant to "show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684,

---

[5] To the extent plaintiff argues that the ALJ did not properly consider evidence of her pain, she failed to provide any argument pursuant to 20 C.F.R. § 404.1529.   Generally speaking,

> [a] claimant may establish that she has a disability through [her] own testimony of pain or other subjective symptoms.   In evaluating a claimant's testimony, the ALJ should consider, among other things, (1) the claimant's daily activities, (2) the duration, frequency, and intensity of the claimant's symptoms, (3) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms, and (4) the treatment or other measures taken by the claimant to alleviate symptoms.

*Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 838 (11th Cir. 2020) (internal citations and quotations omitted).   However, plaintiff fails to point to any evidence that she made such a showing before the ALJ.   Plaintiff did not testify as to her pain in front of the ALJ, and plaintiff cited to evidence of neuropathy in her brief in the form of a diagnosis, but as discussed above, did not provide any evidence that the pain was disabling.

12

690 (11th Cir. 2005). Despite plaintiff's references to various diagnoses of diabetes with neuropathy, none of these diagnoses were accompanied by references to additional limitations. *See, e.g.*, tr. 477-84 (finding no functional or impaired use of extremities accompanying neuropathy diagnosis). Because plaintiff has not pointed to any limitations which arose as a result of her neuropathy—and because plaintiff bears the burden of making such a showing—the failure of the ALJ to include such limitations in the RFC was not error.

### III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**. This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 21st day of July, 2020.

_/s/ Christopher L. Ray_
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA